**STATE v. ADAMS**

[103 N.C. App. 158 (1991)]

STATE OF NORTH CAROLINA, Plaintiff-Appellee v. JESSIE DANIEL
ADAMS, Defendant-Appellant

No. 9021SC817

(Filed 4 June 1991)

1. **Criminal Law § 314 (NCI4th) — defendant's motion for joinder — denied — no abuse of discretion**

   The trial court did not abuse its discretion in an arson prosecution by denying defendant's motion to join or consolidate his trial with that of a codefendant. A defendant may not independently assert his preference for joinder; under our statutory structure, the choice is for the State, not a defendant. Moreover, a trial court's ruling on consolidation or severance is discretionary and there was no abuse of discretion. N.C.G.S. § 15A-926(b)(2)a.

   **Am Jur 2d, Trial §§ 17 et seq.**

2. **Criminal Law §§ 89.7 (NCI3d); 82.2 (NCI3d) — arson — witness's medical history — excluded — no error**

   The trial court in an arson prosecution properly excluded testimony and records concerning a witness's mental and emotional condition and treatment. The trial court examined the medical records *in camera* and found no good cause to violate the confidentiality of the physician-patient relationship, and the Court of Appeals examined the records and noted that they revealed no evidence bearing on the credibility of the witness.

   **Am Jur 2d, Witnesses §§ 230 et seq.**

3. **Criminal Law § 1195 (NCI4th) — arson — sentencing — potential mitigating factors — loss by failure of court to join defendants — no error**

   An arson defendant's argument that he was deprived of potential mitigating factors at sentencing by the denial of his joinder motion was rejected where the court had previously resolved the joinder question adversely to defendants.

   **Am Jur 2d, Criminal Law §§ 525 et seq.**

APPEAL by defendant from judgment entered 5 April 1990 in FORSYTH County Superior Court by *Judge James M. Long.* Heard in the Court of Appeals 20 March 1991.

In July 1989, Eugene Martin resided at 648 East Sprague Street in Winston-Salem. Prior to this time, Martin had allowed Tommy Neal to move into his residence. In April or May 1989, Martin had allowed defendant Adams to move in as well. Due to problems involving rent payment, noise, maintenance, visitation and altercations with his new residents, Martin ordered both Neal and Adams to move out of his home in late July. Someone broke into Martin's house the following evening and Martin boarded up all windows and doors except the front door. A couple of days later, on 30 July 1989, Martin discovered Neal and Adams at his residence and again ordered them to leave and not come back. Later that same evening following a night of drinking beer and playing pool, Martin and his brother returned to Martin's house and retired for the evening. During the early morning, Martin's brother discovered the house was on fire. After unsuccessful attempts to extinguish the fire, Martin and his brother were forced to leap through the flames onto the sidewalk in front of the house. Along with the help of a neighbor the two were able to extinguish the fire with the neighbor's garden hose.

An investigation by the Winston-Salem Fire Department revealed that an accelerant, probably gasoline, was poured onto a mattress, placed at the door on the front porch, and ignited. The investigation also revealed that next-door neighbor Tamara West was an eyewitness to the incident.

Tamara West testified that she saw defendant pour gasoline onto the mattress placed at the door on the front porch of 648 East Sprague Street and Tommy Neal ignite the mattress. Martin testified that while the fire was being extinguished, defendant drove by his residence. A few minutes after the fire was extinguished defendant returned to the scene and denied involvement in the fire.

Defendant testified, generally attempting to establish an alibi, to the effect that he was at a local bar on the evening of the fire. After leaving the bar, he drove by Martin's house and seeing

the fire, stopped and talked to Martin, who accused him of trying to burn his house. Defendant testified that Martin later told defendant that he did not believe defendant burned his house but that Tommy Neal did so. After being arrested, defendant spent some nights with Martin.

The jury found defendant guilty of first degree arson. After finding that an aggravating factor outweighed mitigating factors, the trial court sentenced defendant to 25 years' imprisonment, a sentence in excess of the presumptive. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General William B. Ray, for the State.*

*Wilson, DeGraw, Johnson & Rutledge, by Daniel S. Johnson, for defendant-appellant.*

WELLS, Judge.

[1] Defendant first assigns error to the trial court denying defendant's motion to join or consolidate the trials of defendant and Tommy Neal. Upon written motion *of the prosecutor*, charges against two or more defendants *may be* joined for trial when each of the defendants is charged with accountability for the same offense (Emphasis supplied). N.C. Gen. Stat. § 15A-926(b)(2)a. Although the thrust of the defendant's argument is that he was entitled to joinder on his motion, the only authority he offers to support that argument is the general proposition that joinder of defendants charged with the same offense is generally favored in the interest of judicial economy. The cases defendant relies on, *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986), and *State v. Jenkins*, 83 N.C. App. 616, 351 S.E.2d 299 (1986), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987), speak to the entitlement *of the State* to joinder of defendants under the pertinent provisions of N.C. Gen. Stat. § 15A-926. In our opinion a defendant could not independently assert his preference for joinder with a co-defendant. Under our statutory joinder structure, the choice is for the State, not a defendant. Finally we note that it is well established that a trial court's ruling on the consolidation or severance of cases is discretionary and will not be disturbed absent a showing of abuse of discretion. *Belton, supra.* We discern no abuse of that discretion here. This argument is rejected.

[2] Defendant assigns error to the trial court excluding medical records and preventing cross-examination of the State's witness,

Tamara West, regarding her mental and emotional condition and treatment. On cross-examination, defendant attempted to examine Tamara West about her treatment and hospitalization for alcohol abuse and for "a mental condition or mental problems," and hospitalization for "any emotional problems." The State's objections to those questions were sustained. Defendant also subpoenaed Tamara West's medical records from Forsyth/Stokes Mental Health Center. Over the State's objection, defendant was not allowed to examine the custodian of those records as to their content. The trial court examined the medical records *in camera* and found no good cause to violate the confidentiality of the physician-patient relationship and preserved those records sealed for review by the appellate court.

Although a witness may be impeached by a showing of mental deficiency as it bears upon the witness' credibility, *State v. Witherspoon*, 210 N.C. 647, 188 S.E. 111 (1936), medical records for treatment purposes are privileged and the contents of such records may be disclosed only if, in the opinion of the trial court, disclosure is necessary to a proper administration of justice. N.C. Gen. Stat. § 8-53 (1986). After examining the medical records on appeal we note that the records reveal no evidence bearing on the credibility of the State's witness, the only possible basis for their relevance. We therefore conclude that the trial court properly excluded Tamara West's medical records and ruled correctly as to defendant's cross-examination. This assignment is overruled.

[3] After the jury verdict the trial court conducted a sentencing hearing. At that hearing the court found one aggravating factor, namely that defendant had prior convictions for criminal offenses punishable by more than 60 days' confinement. The court also found two mitigating factors. They were that defendant suffered from a mental condition (intoxication) that was insufficient to constitute a defense but significantly reduced his culpability and that the relationship between defendant and Eugene Martin, the victim, was an extenuating circumstance. The trial court then ruled that the sole aggravating factor outweighed the two mitigating factors and sentenced defendant to 25 years' imprisonment.

Defendant contends that the denial of his joinder motion "resulted in the loss of potential mitigating factors to be considered for sentencing." He suggests that had his trial been joined with that of Tommy Neal, certain factors in mitigation might have been

disclosed, such as duress, compulsion, or a passive role. As we have resolved the question of defendant's asserted entitlement to joinder adversely to him, we must reject this argument.

We conclude that defendant had a fair trial, free of prejudicial error.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.